678 S.E.2d 847

**STATE of West Virginia ex rel. James L. KNOTTS, Petitioner**

v.

**The Honorable Richard FACEMIRE, Judge of the Circuit Court of Clay County; and The Honorable Kelly Hamon McLaughlin, Special Prosecuting Attorney of Clay County, Respondents.**

No. 34647.

Supreme Court of Appeals of West Virginia.

Submitted: April 29, 2009.

Filed: June 5, 2009.

William Edward ReBrook, III, Michael T. Clifford, Charleston, WV, for Petitioner.

Kelly Hamon McLaughlin, Special Prosecuting Attorney of Clay County, Sutton, WV, for Respondents.

McHUGH, Justice:

Petitioner James L. Knotts seeks a writ of prohibition to prevent a criminal jury trial set before the Circuit Court of Clay County[1] from proceeding based on the lengthy delay between the alleged criminal offenses and the issuance of the indictment predicated on those offenses. Citing the thirteen-year period between when the State was first made aware of the alleged offenses and when it finally decided to charge him,[2] Petitioner argues that the delay constitutes a violation of his due process rights.[3] In explanation of the lengthy delay, the State asserts that the alleged victim's parents did not want this

matter prosecuted due to the young age of their daughter. Upon our careful review of this matter in conjunction with existing law, we issue a writ of prohibition as moulded below.

## I. Factual and Procedural Background

On July 15, 2008, the grand jury sitting in Clay County returned an indictment against Petitioner containing 129 counts of sexual assault-related offenses.[4] In the indictment, the State alleges that the first offense occurred on March 16, 1991, and the final offense on March 18, 1994. Witness statements obtained during discovery purportedly demonstrate that both the Sheriff of Clay County, Clarence Douglas, and the Prosecuting Attorney, Jeff Davis, had knowledge in 1995 of the allegations that are averred in the indictment.

On or about September 13, 2006, Trooper J.T. Portillo of the West Virginia State Police initiated a criminal investigation regarding an alleged unrelated sexual assault by the Petitioner against Petitioner's niece, J.N.[5] During this investigation, Trooper Portillo learned that Petitioner had previously been accused of sexually abusing a different niece, Allison Nicholas. Based on the decision of Ms. Nicholas, now an adult, to cooperate with the State's investigation, Petitioner was arrested and subsequently indicted.

Petitioner filed a motion to quash the indictment based on the lengthy delay between when the State had actual knowledge of the offenses allegedly committed by Petitioner against his niece, Ms. Nicholas, and when the State finally decided to charge him with those offenses. During a hearing before the trial court on January 5, 2009, Petitioner's counsel related that certain evidentiary items critical to Petitioner's defense are unavailable due to the protracted period of time since the

---

1. At the time the Petition for a Writ of Prohibition was lodged with this Court, the trial date was set for January 6, 2009.

2. The State was informed of the offenses at issue in 1995 and the indictment was issued on July 15, 2008.

3. *See* U.S. Const. amend. V; W.Va. Const. art. III, § 10.

4. All of the counts charge Petitioner with either sexual assault in the first degree, incest, sexual abuse by a custodian, or sexual assault in the third degree.

5. As is our custom with sensitive domestic or juvenile matters, we identity the alleged victim by initials. *See State ex rel. Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

alleged offenses took place. After hearing argument of counsel on the issue of prejudicial delay, the trial court denied the motion to quash.[6] Through this petition for a writ of prohibition, Petitioner seeks relief from the trial court's decision to permit the trial in this matter to proceed.

## II. Standard of Review

In syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), we announced the standard by which we determine whether a trial court has exceeded its jurisdiction:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With these factors in mind, we proceed to determine whether Petitioner has established the necessary grounds for the issuance of a writ of prohibition.

## III. Discussion

### A. Prior Standard Governing Preindictment Delay

To support his position that the delay between the alleged sexual offenses and the State's decision to prosecute him for those offenses is prejudicial, Petitioner looks to this Court's decision in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W.Va.1980). When the defendant in *Hey* became eligible for parole in 1979 following his conviction for offenses arising out of a robbery he committed in 1967, the government sought to charge him with another offense arising from that same robbery.[7] This Court was asked to consider whether a delay of eleven years between the identification, location, and connection of the defendant with an alleged criminal act and the formal accusation-trial process was prejudicial. *Id.* at 395. Recognizing that the Sixth Amendment right to a speedy trial is not implicated in cases where the delay at issue is preindictment,[8] we observed that "[p]re-arrest or pre-accusatory delays are usually governed by statutes of limitations." *Id.* at 396. This general rule, however, is tempered by the recognition that "a defendant's due process rights can be violated by a prosecution initiated within the statute [of limitations] but unjustifiably delayed by the government."[9] *Id.* at 396.

In deciding *Hey*, this Court sought guidance from the United States Supreme Court and recognized that the high court had refrained from adopting a "universally applicable" test for resolving when due process is invoked by preindictment delay. 269 S.E.2d at 396; *accord U.S. v. Lovasco*, 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)

---

6. The trial court ruled that Petitioner could renew his arguments of prejudice at a later time.

7. Given intervening rulings that require contemporaneous prosecution of charges arising from a single criminal event, we observed the unlikelihood of another case factually analogous to *Hey*. 269 S.E.2d at 398.

8. This is because, as we explained in *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), "a person who has not been arrested is not subject to public accusations nor restraints on his liberty." *Id.* at 381, 382 S.E.2d at 575 (citing *U.S. v. Marion*, 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

9. In commenting on the lack of explanation for the government's eleven-year-delay in bringing the additional charges in *Hey*, we inferred "a prosecutorial decision that Leonard should not be paroled." 269 S.E.2d at 395.

(confirming inability to identify "in the abstract circumstances ... [under] which preaccusation delay would require dismissing prosecutions"). Citing the seminal decision of *U.S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), we discussed how these cases require a balancing of interests: "To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." *Hey*, 269 S.E.2d at 396 (citing *Marion*, 404 U.S. at 325, 92 S.Ct. 455). Despite the lack of a bright line test, the United States Supreme Court did identify what is often referred to as the *Marion* test in announcing that the dismissal of an indictment would be required "if it were shown ... that the preindictment delay ... caused substantial prejudice to appellees' rights to a fair trial *and* that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S. at 324, 92 S.Ct. 455 (emphasis supplied).

After noting the inherent limitation of federal precedent on this Court,[10] we proceeded to address the concerns prompted by a lengthy preindictment delay:

> One facet of a citizen's due process protections is the right to have the government accuse him of a crime within a reasonable time from discovery of its commission and determination reasonably reached, that he or she did the criminal act. It is the government's duty to proceed with reasonable diligence in its investigation and preparation for arrest, indictment and trial. If it fails to do so after discovering sufficient facts to justify indictment and trial, it violates this due process right. Of course, the right itself arises from the substantial prejudice that is presumed to affect a defendant's ability to respond to charges against him when the charges are time-worn and stale.

*Hey*, 269 S.E.2d at 397–98.

### 1. Use of Burden–Shifting Mechanism

Focusing on the importance of timely prosecutions, we held in syllabus point one of

*Hey* that "[a] delay of eleven years between the commission of a crime and the arrest or indictment of a defendant, his location and identification having been known throughout the period, is presumptively prejudicial to the defendant and violates his right to due process of law." *Id.* at 394. We remanded the matter to "give the government an opportunity to justify the delay by proving its reasonableness." *Hey*, 269 S.E.2d at 398. Following a hearing on the reasons for the prosecutorial delay, we instructed that the indictment should be quashed if the government was unable to prove that it acted with reasonable diligence "once it had sufficient information to do so." *Id.* at 399.

We observed in *Hey* that the assertion of a due process violation based on preindictment delay will not always involve allegations of facially prejudicial delay. In those cases where the delay is not extreme, we held that a trial court must "weigh[ ] the reasons for the delay against the impact of the delay upon the defendant's ability to defend himself." *Hey*, 269 S.E.2d at 394, syl. pt. 2, in part. In *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), we determined that where the delay is not extreme "the burden initially rests upon the defendant to demonstrate how such delay has prejudiced his case." *Id.* at 344, 298 S.E.2d at 881, syl. pt. 1, in part.

Petitioner argues that under this Court's reasoning in *Hey*, there can be no question that the thirteen-year delay in his case was presumptively prejudicial. He maintains that the lengthy delay between the alleged offenses and the State's decision to prosecute him for those offenses has put him at an untenable disadvantage. Due to the passage of more than a decade, he posits that records have been destroyed and memories have faded. As a consequence, he asserts that he has been denied the right to successfully defend against the charges at issue.

### 2. Requirement of Tactical Delay

In response to Petitioner's argument, the State looks to this Court's decision in *Hund-*

---

10. "We need not interpret federal law to define due process or Sixth Amendment rights because we have our own state due process and speedy trial provisions." *Hey*, 269 S.E.2d at 397 (citing W.Va. Const. art. III, §§ 10, 14).

*ley v. Ashworth,* 181 W.Va. 379, 382 S.E.2d 573 (1989). At issue in *Hundley* was the eight-year delay between the reporting of alleged child abuse to the Department of Human Services and the defendant's indictment. In addressing whether that delay constituted a due process violation, we recognized that the United States Supreme Court had apparently "settled on a due process test for preaccusation delay." *Id.* at 381, 382 S.E.2d at 575. Relating the standard identified by the high court in *U.S. v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), we observed that the high court had borrowed language from its earlier decisions of *Marion* and *Lovasco* in ruling that

> "the Fifth Amendment requires the dismissal of an indictment, even it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense."

*Hundley,* 181 W.Va. at 382, 382 S.E.2d at 576 (omitting citations).

In light of the high court's seeming adoption of a due process standard for preaccusation delay,[11] we reviewed our previous decision in *Hey* to employ a "burden-shifting mechanism." *Hundley,* 181 W.Va. at 382, 382 S.E.2d at 576. That approach required that in those instances of extreme or gross delay where the prejudice was presumptive, the burden shifted to the prosecution to rebut the presumption by explaining the reason for the delay. This burden-shifting mechanism, as we stressed in *Hundley,* was invoked in those instances when the prosecution was aware of the defendant's "location

and identification ... throughout the period" of delay. *Id.* at 382, 382 S.E.2d at 576 (quoting *Hey,* 269 S.E.2d at 394, syl. pt. 1, in part). And, in those limited factual instances where the *Hey* burden-shifting analysis was required, "the State in rebutting the prejudice need only show that the delay was not deliberately designed to gain a tactical advantage over the defendant." *Hundley,* 181 W.Va. at 383, 382 S.E.2d at 577.

Seeking to adopt a standard that flowed from our prior law and comported with the decision of the United States Supreme Court in *Gouveia,* we held in syllabus point two of *Hundley:*

> The Due Process Clause of the Fifth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution require the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the State's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.

181 W.Va. at 380, 382 S.E.2d at 574, syl. pt. 2. Applying this standard to the facts of *Hundley,* we found that because the state agency's knowledge was not imputable to law enforcement, the State did not have actual knowledge of the abuse until five months prior to the indictment's return.[12] Consequently, we ruled that the *Hundley* defendant "did not clear the first hurdle by showing that the State had, by deliberate design, delayed the bringing of the charges." *Id.* at 383, 382 S.E.2d at 577.

---

**11.** Although we remarked in *Hundley* that the United States Supreme Court had finally "settled" on a due process test for preindictment delay, we recognized that the language from *Gouveia* upon which we were relying was *dicta. Hundley,* 181 W.Va. at 381–82 n. 3, 382 S.E.2d at 575–76 n. 3. We noted that uncertainty was further suggested by the high court's decision, subsequent to its ruling in *Lovasco,* to employ the Sixth Amendment speedy trial analysis to decide whether a preindictment delay implicated the defendant's Fifth Amendment Due Process rights. *See Hundley,* 181 W.Va. at 381–82 n. 3, 382 S.E.2d at 575–76 n. 3 (discussing *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars,*

461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983)); *see also Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (adopting four-part balancing test for determining whether postindictment delay deprived defendant of Sixth Amendment right to speedy trial).

**12.** Eight years after the abuse was originally reported to the Department of Human Services, the mother of the victims contacted the Raleigh County Sheriff's office to inquire about the matter and learned that the state agency had not reported the incident to law enforcement.

Like the defendant in *Hundley,* the State in the case before us argues that Petitioner is similarly unable to clear the first hurdle of the test we adopted for identifying when preindictment delay requires the dismissal of an indictment. *See Hundley,* 181 W.Va. at 380, 382 S.E.2d at 574, syl. pt. 2. The thirteen-year delay between the offenses and the indictment, according to the State, is solely attributable to the specific request of Ms. Nicholas' parents that the matter not be prosecuted due to the young age of their daughter.[13] Only when Trooper Portillo was investigating another instance of alleged sexual abuse against Petitioner did he uncover the earlier allegations of sexual abuse allegedly committed by Petitioner against Ms. Nicholas. Rather than the aftermath of calculated efforts designed to gain an advantage over Petitioner, the State maintains that the delay resulted solely from the State's decision to honor the request of the alleged victim's parents. Based on his inability to demonstrate that the delay involved in this case was tactical in nature, the State argues that Petitioner has failed to meet step one of the test we adopted in *Hundley. See id.* at 380, 382 S.E.2d at 574, syl. pt. 2.

### B. Improper Reliance on Presumptive Prejudice

This case presents us with an opportunity to revisit the issue of preindictment delay and, specifically, to consider when due process is implicated by such delay. In reviewing the law in this area, we uncovered authority that expressly undermines this Court's decision to employ a presumption of prejudice where an extensive preindictment delay is involved. *See Hey,* 269 S.E.2d at 394, syl. pt. 2. Our holding in *Hey* is called into question by the Fourth Circuit's recognition that "[t]he Due Process Clause has never been interpreted so as to impose a presumption of prejudice in the event of a lengthy preindictment delay...." *Jones v. Angelone,* 94 F.3d 900, 906 (4th Cir.1996); *accord U.S. v. Lucien,* 61 F.3d 366, 370 (5th Cir.1995) (rejecting contention that delay was presumptively prejudicial, holding that "a defendant must show actual prejudice to establish a claim of preindictment delay under the due process clause"); *State v. Collins,* 118 Ohio App.3d 73, 691 N.E.2d 1109, 1111 (1997) (recognizing speedy trial analysis[14] is genesis of presumptive prejudice rulings and holding that "notion of presumptive prejudice ... has no application to preindictment delays").[15]

Firmly rejecting an argument to extend the presumptive prejudice approach used for Sixth Amendment speedy trial claims to due process claims in *Jones,* the Fourth Circuit underscored the unwavering approach taken by the high court on this issue: "The Supreme Court has repeatedly emphasized that, in order to establish a due process violation, the defendant must show that the delay 'caused him actual prejudice in presenting his defense.'" *Jones,* 94 F.3d at 906 (quoting *Gouveia,* 467 U.S. at 192, 104 S.Ct. 2292). Further recapping, the Fourth Circuit observed that the United States Supreme Court "specifically rejected the argument that the 'potential prejudice and passage of time' is sufficient to sustain a due process claim." *Jones,* 94 F.3d at 906 (quoting *Marion,* 404 U.S. at 323, 92 S.Ct. 455). Referencing its preference for resolving issues of delay by relying upon statutes of limitations the United States Supreme Court stated: " 'The law has provided other mechanisms to guard against *possible as distinguished from actual* prejudice resulting from the passage of time between crime and arrest or charge.' " *Jones,* 94 F.3d at 906

---

**13.** From our review of the limited record submitted in this matter, Petitioner appears to suggest that at some point Mrs. Nicholas did make inquiries of the prosecutor regarding the status of the investigation.

**14.** *See Barker v. Wingo,* 407 U.S. at 530–33, 92 S.Ct. 2182.

**15.** The federal district court in *U.S. v. Stoecker,* 920 F.Supp. 867 (N.D.Ill.1996), stated that to its knowledge only one court had ever accepted the premise that presumed prejudice from a lengthy delay could be relied upon to establish a due process violation. In *U.S. v. Crouch,* 835 F.Supp. 938 (S.D.Tex.1993), the trial court found that the defendant had proven actual prejudice and established a presumption of prejudice based on preindictment delay. *Stoecker,* 920 F.Supp. at 871. On appeal, however, the Fifth Circuit "affirmed the dismissal of the indictment, not based on presumptive prejudice, but rather on the lower court's finding of actual prejudice...." *Id.* at 871.

(quoting *Marion*, 404 U.S. at 322, 92 S.Ct. 455) (emphasis in original). Critically, as the Fourth Circuit recounted, "the courts of appeals have uniformly held that to obtain a dismissal under the Due Process Clause a defendant must establish that a pre-indictment delay *actually* prejudiced his defense...." *Jones*, 94 F.3d at 907 (emphasis in original); *accord Wilson v. McCaughtry*, 994 F.2d 1228, 1234 (7th Cir.1993) (holding that despite sixteen-year delay between crime and indictment, defendant must "demonstrate that he suffered actual and substantial prejudice"). After reviewing the rulings of the various federal circuit courts, the Fourth Circuit concluded that "every court that has specifically considered the application of *Doggett* [lengthy post-indictment delay is presumptively prejudicial for speedy trial purposes][16] ... has held that '[t]he concept of presumed prejudice has no place in a due process analysis.'" *Jones*, 94 F.3d at 907 (citations omitted).

### C. Requirement of Actual Prejudice

The need to prove actual prejudice to demonstrate a due process violation based on preindictment delay was first recognized by this Court in *Hundley*. Citing to our decisions in *Hey* and *Richey*, we stated: "In these cases, as well as those that have followed them, we have focused on the length of the delay, the reason for it, and, more importantly, whether there was *actual prejudice* to the defendant's case." *Hundley*, 181 W.Va. at 382, 382 S.E.2d at 576 (emphasis supplied). Under the new point of law established in *Hundley*, we required a defendant seeking to demonstrate a due process violation to prove that the preindictment delay "caused him *actual prejudice* in presenting his defense." *Id.* at 380, 382 S.E.2d at 574, syl. pt. 2, in part (emphasis supplied). Although we clearly confirmed that actual prejudice was required to demonstrate a due process violation in *Hundley*, we did not appreciate the attendant obligation to revisit our earlier ruling in *Hey*.

■ After a thorough reconsideration of this issue, we are convinced that our ruling in *Hey*, which permits the use of presumptive prejudice to establish a due process violation based on preindictment delay, is contrary to the clear weight of authority throughout this country. Courts are uniformly in agreement that actual prejudice must be proven to advance a due process claim for preindictment delay. *See Jones*, 94 F.3d at 906–907. Accordingly, we hold that in order to maintain that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice. To the extent our prior decisions in *Hey*, *Hundley*, and their progeny are inconsistent with this holding, they are expressly overruled.

### D. Disagreement Among Federal Circuit Courts

While the law is settled as to the requirement of actual prejudice, the federal circuit courts do not agree on the test for determining whether preindictment delay resulted in a due process violation. Most of the circuits rely upon the standard that was seemingly adopted by the United States Supreme Court in *Gouveia* by requiring a demonstration of actual prejudice combined with a showing that the delay was a tactical device orchestrated to benefit the State. Two circuits-the Fourth and Ninth-have expressly departed from this approach. Rather than requiring that a defendant must prove tactical delay on the State's part, the Fourth and Ninth Circuits rely instead on a balancing test approach that weighs the actual prejudice demonstrated by a defendant against the government's reasons for the delay. *See Howell v. Barker*, 904 F.2d 889, 895 (4th Cir.1990); *U.S. v. Ross*, 123 F.3d 1181, 1185 (9th Cir.1997); *see also U.S. v. Sabath*, 990 F.Supp. 1007, 1017–18 (N.D.Ill.1998) (adding Seventh Circuit to tally of circuits using balancing test rather than rigid standard of fault, based on careful reading of *U.S. v. Sowa*, 34 F.3d 447 (7th Cir.1994)).[17]

---

**16.** *Doggett v. U.S.*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

**17.** We note, however, that the Fourth Circuit categorized *Sowa* as among those decisions that require evidence of the government's intentional delay to gain an unfair advantage over the defendant. *See Jones*, 94 F.3d at 905.

Before adopting its standard for analyzing preindictment delay in *Howell,* the Fourth Circuit reviewed the guidance offered by the United States Supreme Court.

> [I]n both *Lovasco* and *Marion,* the Supreme Court made it clear that the administration of justice, vis-a-vis a defendant's right to a fair trial, necessitated a case-by-case inquiry based on the circumstances of each case. Rather than establishing a black-letter test for determining unconstitutional preindictment delay, the Court examined the facts in conjunction with the basic due process inquiry: "whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions'... and which define 'the community's sense of fair play and decency.'" *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048 (citations omitted).

*Howell,* 904 F.2d at 895.

Reflecting on these laudatory principles, the Fourth Circuit opined in *Howell:*

> [W]e cannot agree with the position taken by the State of North Carolina and those other circuits which have held that a defendant, in addition to establishing prejudice, must also prove improper prosecutorial motive before securing a due process violation. Taking this position to its logical conclusion would mean that no matter how egregious the prejudice to a defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive.

*Id.* at 895.

Based on these considerations, the Fourth Circuit affirmed the approach it first announced in *U.S. v. Automated Medical Laboratories,* 770 F.2d 399 (4th Cir.1985), for analyzing whether preindictment delay results in a due process violation:

> The better position ... is to put the burden on the defendant to prove actual prejudice. Assuming the defendant can establish actual prejudice, then the court must balance the defendant's prejudice against the government's justification for delay. "The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'"

*Howell,* 904 F.2d at 895 (citations omitted). When asked by the prosecution in *Jones* to alter its approach, the Fourth Circuit remained firm in its decision to employ what it designated as "the more lenient *Howell* standard applicable in this circuit."[18] 94 F.3d at 905.

Not all courts view the decisions of the United States Supreme Court in this area as requiring the interpretation accorded them by the majority of the federal circuit courts. The Fifth Circuit has expressly "recognized that neither *Marion* nor *Lovasco* is crystal clear on this issue." *U.S. v. Crouch,* 84 F.3d 1497, 1510 (5th Cir.1996). In a similar vein, the Fourth Circuit articulated that *Gouveia* is not "clear precedent."[19] *Howell,* 904 F.2d at 894. Characterizing federal precedent in this area as "unsettled," the New Hampshire Supreme Court recently adopted an approach that comports with the standard utilized by the Fourth Circuit in *Howell* and *Jones:*

> "[T]he defendant must initially show that actual prejudice has resulted from a delay. Once such a showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay." As the trial court correctly ruled,

---

**18.** In *Jones,* the Commonwealth of Virginia urged the court to overrule *Howell,* arguing against the use of a standard that differed from the approach of the United States Supreme Court in *Gouveia.* 94 F.3d at 904–05. The Fourth Circuit had opined in *Howell* that *Gouveia* was not "clear precedent" and that the high court "was merely restating in *dicta* the established outer contour of unconstitutional preindictment delay." 904 F.2d at 894.

**19.** *See supra* note 18.

"whether the Government acted in bad faith in delaying indictment" is "[o]ne factor to consider in assessing the reasonableness of the delay."

*State v. Knickerbocker*, 152 N.H. 467, 880 A.2d 419, 423 (2005) (citations omitted).

### E. Adoption of Fourth Circuit's Balancing Approach

■ Upon our careful consideration of the rationale relied upon by the Fourth Circuit Court of Appeals in *Howell* and again in *Jones*, we are compelled to agree with the approach adopted by the Fourth Circuit for analyzing preindictment delay. Only by eliminating the burden imposed on a defendant to demonstrate that the State gained an advantage through preindictment delay, will the overarching concern of fundamental fairness that undergirds the Due Process Clause be furthered. Accordingly, we hold that in determining whether preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the initial burden is on the defendant to show that actual prejudice has resulted from the delay. Once that showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. In balancing these competing interests, the core inquiry is whether the government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play. To the extent our prior decision in *Hundley* and its progeny are inconsistent with this ruling, they are expressly overruled.

### F. Evidence Required to Prove Actual Prejudice

#### 1. Prejudice Must Be Substantial

■ Given our decision to depart from the previously established approach for analyzing whether preindictment delay resulted in a due process violation, a hearing will be necessary to determine whether Petitioner can demonstrate that actual prejudice has resulted from the delay. As the Fourth Circuit held in *Jones*, a defendant is required to introduce evidence of "actual substantial prejudice" to establish that his case has been prejudiced by preindictment delay.

This is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, ... but also that he show that any actual prejudice was *substantial*—that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected.

94 F.3d at 907 (emphasis in original).

■ Dimming memories and the passage of time alone are insufficient to establish the level of prejudice necessary to show the denial of due process. *Marion*, 404 U.S. at 326, 92 S.Ct. 455; *accord U.S. v. McDougal*, 133 F.3d 1110, 1113 (8th Cir.1998) (stating that "the mere 'loss of or impairment of memories does not constitute actual prejudice for purposes of the [D]ue [P]rocess [C]lause'"); *U.S. v. Beszborn*, 21 F.3d 62, 67 (5th Cir. 1994) (recognizing that "[v]ague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay"). Where the alleged prejudice stems from the unavailability of witnesses, the Fourth Circuit explained in *Jones* what type of evidence is typically required: "[C]ourts have generally required that the defendant identify the witness he would have called; demonstrate, with specificity, the expected content of that witness' testimony; establish to the court's satisfaction that he has made serious attempts to locate the witness; and, finally, show that the information the witness would have provided was not available from other sources." 94 F.3d at 908; *see also U.S. v. Cornielle*, 171 F.3d 748, 752 (2nd Cir.1999) (recognizing that actual prejudice "is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness"); *U.S. v. Scoggins*, 992 F.2d 164, 167 (8th Cir.1993) (holding that death of potential alibi witness did not cause actual prejudice because defendant failed to "relate the substance of the testimony of the missing witness in sufficient detail" and to show witness' testimony not available from other sources); *Sabath*, 990 F.Supp. at 1014 (finding combination of "lost evidence, impaired

memories of fact witnesses, flawed governmental reports, and deceased key witnesses have combined to plague Defendant with just the kind of concrete and substantial prejudice that the Due Process Clause was designed to remedy").

## 2. Defense Was Meaningfully Impaired

 Through a proffer by counsel, Petitioner argued that his ability to establish an alibi with reference to some of the offenses has been hampered by the fading of memories, including his own. He further suggests that the destruction of medical and legal records has affected his ability to successfully defend against the charges at issue. These vague, conclusory allegations that Petitioner raised below do not suffice to meet the burden of actual substantial prejudice that we adopt today. To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

Discussing what is required to meet the burden of showing actual substantial prejudice, the South Carolina Supreme Court elucidated recently that "the defendant must identify the evidence and expected content of the evidence with specificity, as well as show that he made serious efforts to obtain the evidence and that it was not available from other source[s]." *State v. Lee*, 375 S.C. 394, 653 S.E.2d 259, 261 (2007). In *Lee*, the defendant was charged with sexually abusing his two stepdaughters twelve years earlier. Because the alleged victims had been removed by the Department of Social Services after the initial reports of abuse but then returned to the home within a matter of several months, the defendant argued that evidence of the state agency's investigation was critical to his defense. *Lee*, 653 S.E.2d at 261. In concluding that the defendant had established actual substantial prejudice from

the preindictment delay, the appellate court found the following facts determinative:

> Lee had no record of the previous DSS investigation into the alleged abuse. He could not gain access to evidence concerning the Department of Juvenile Justice investigating officer or records from the family court proceedings. Because Lee *never* had access to these records, it was admittedly difficult for him to accurately identify specific pieces of evidence that would have exonerated him. Nonetheless, the absence of any contemporaneous evidence prejudiced Lee's ability to defend himself, as he had no ability to cross-examine the State's witnesses nor obtain items of exculpatory evidence. The missing evidence, although possibly damaging, on balance would have likely benefited [sic] Lee because it would have revealed the State's justification for placing the stepchildren back in the home with Lee and revealed why the State did not prosecute him in 1988 or 1989.

*Id.* at 261 (emphasis in original). While Petitioner argued that the *Lee* case is on all fours with his case, that remains to be seen as he has yet to offer anything but conclusory allegations regarding the prejudice that he has suffered due to the delay involved in this case.

## IV. Conclusion

 As discussed above, the circuit court is required to hold an evidentiary hearing to apply the legal principles that we are adopting through this opinion. If Petitioner is able to meet his burden of demonstrating actual substantial prejudice, then the trial court should proceed to consider the reasons offered by the State for the delay and determine, after weighing the tendered justifications against the demonstrated prejudice, if due process was denied based on the preindictment delay. That determination, as we counseled above, is to be made with reference to the critical considerations that the United States Supreme Court stressed in *Lovasco:* "whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions'... and which define 'the community's sense of fair play and de-

cency.'" 431 U.S. at 790, 97 S.Ct. 2044 (citations omitted).

Based on the foregoing, we grant a writ of prohibition as moulded.

Writ granted as moulded.

Justice WORKMAN, deeming herself disqualified, did not participate in the decision of this case.

Judge SADLER sitting by temporary assignment.