**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Everett J. Frazier, Commissioner,
West Virginia Division of Motor Vehicles,
Respondent Below, Petitioner

**vs.)  No. 20-0313** (Kanawha County 19-AA-87)

Joshua Simpkins,
Petitioner Below, Respondent

**MEMORANDUM DECISION**

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles
("the commissioner"), appeals the order of the Circuit Court of Kanawha County, entered on
March 2, 2020, affirming the administrative reinstatement of Respondent Joshua Simpkins's motor
vehicle operator's license.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal
arguments are adequately presented, and the decisional process would not be significantly aided
by oral argument. Upon consideration of the standard of review[2], the briefs, and the record
presented, the Court finds no substantial question of law and no prejudicial error. For these reasons,
a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of
the Rules of Appellate Procedure.

An officer of the Welch Police Department arrested Mr. Simpkins in late October of 2013
on the suspicion that he was driving under the influence of controlled substances, after Mr.
Simpkins failed three field sobriety tests during a routine traffic stop. A preliminary breathalyzer

---

[1] Petitioner appears by counsel Janet E. James. Respondent appears on his own behalf.

[2] The standard of review is as follows:

"'On appeal of an administrative order from a circuit court, this Court is
bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and
reviews questions of law presented *de novo*; findings of fact by the administrative
officer are accorded deference unless the reviewing court believes the findings to
be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518
(1996)." Syl. Pt. 1, *Dale v. Odum*, 223 W. Va. 601, 760 S.E.2d 415 (2014).

Syl. Pt. 1, *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020).

1

test indicated Mr. Simpkins had not consumed alcohol. However, the officer later testified that he detected the odor of marijuana when he approached the automobile during the traffic stop, and that Mr. Simpkins admitted to having "earlier" smoked marijuana. The officer requested a search by a K-9 unit, but there is no evidence in the appendix record indicating a seizure of illegal substances.

The officer took Mr. Simpkins to a local hospital to provide a blood sample (which Mr. Simpkins asserts that he requested) for testing. The officer transmitted the sample to the West Virginia State Police Laboratory. Sometime thereafter, the McDowell County Prosecuting Attorney's Office informed laboratory staff that the State did not require testing of the sample, and the sample was destroyed.

The commissioner revoked Mr. Simpkins's motor vehicle operator's license, and Mr. Simpkins requested an administrative hearing before the Office of Administrative Hearings ("OAH"). A hearing was conducted in 2016. Of crucial note, when questioned at the hearing, the investigating officer was unable to identify the "earlier" time that Mr. Simpkins was supposed to have smoked marijuana. Mr. Simpkins testified that he told the officer that he had smoked marijuana in the distant past, but not that evening, and that he requested the administration of a blood test to prove that he had not recently used marijuana. The OAH reversed the commissioner's revocation, reasoning that an individual officer's failure to test blood or to make blood evidence available to the respondent for further testing denied respondent's statutory due process rights under West Virginia Code § 17C-5-9. The OAH entered its order more than three years after it conducted the hearing. The commissioner appealed the OAH's final order to the Circuit Court of Kanawha County which agreed with the OAH.

There is evidence that Mr. Simpkins requested the administration of a blood test when he was arrested under suspicion of driving under the influence of controlled substances. The commissioner seeks reversal, arguing that the OAH and the circuit court overturned his revocation order solely based on the absence of the results of the blood test that Mr. Simpkins requested. We recently tailored the considerations we deem important in cases such as this:

> In a proceeding involving the revocation of a driver's license for driving under the influence of alcohol, controlled substances, or drugs where a driver demands a blood test pursuant to West Virginia Code § 17C-5-9 [2013], but the test is never given, a chemical analysis of the blood that is withdrawn is never completed, or the blood test results are lost, the trier of fact must consider (1) the degree of negligence or bad faith involved in the violation of the statute; (2) the importance of the blood test evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the proceeding to sustain the revocation. The trier of fact must consider these factors in determining what consequences should flow from the absence of the blood test evidence under the particular facts of the case.

Syl. Pt. 6, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021).

Upon application of the three considerations described in *Talbert*, we find no error in the circuit court's order. Mr. Simpkins challenges a nearly decade-old revocation without the benefit

of blood test results which the OAH found he requested. It is undisputed that the prosecuting attorney's office—a State actor—authorized the destruction of the blood sample. Mr. Simpkins testified that his admission to having smoked marijuana was a general admission, not one related to his activities earlier in the evening of his arrest, and the officer did not refute this information when recalled to testify. Although the officer testified that he detected the odor of marijuana in Mr. Simpkins's automobile, no marijuana was recovered. Under the unique circumstances before us, where the OAH findings indicate a teetering balance of evidence, the *Talbert* concerns suggest that Mr. Simpkins required the results of the blood test that he requested and was prejudiced by its absence.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 20, 2022

**CONCURRED IN BY:**

Chief John A. Hutchison
Justice Elizabeth D. Walker
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Justice Tim Armstead

WOOTON, J., concurring:

I concur in the majority's conclusion that the Office of Administrative Hearings ("OAH") and circuit court's reinstatement of petitioner's license should be affirmed. However, I write separately to once again express my staunch disagreement with the Court's continued insistence on fact-finding in the context of administrative DUI revocations. In this case, the OAH, as affirmed by the circuit court, reinstated petitioner's license because blood test results were not made available to him, notwithstanding a factual dispute about whether petitioner or the arresting officer requested the blood testing. As a result, the OAH did not reach the issue of whether petitioner was DUI. Subsequent to the OAH's decision and the circuit court's affirmance, a majority of this Court created a set of factors to be considered by the fact-finder where *driver*-requested blood test results are not made available, to determine what the consequence of that omission should be. *See* Syl. Pt. 6, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021).

The memorandum decision affirms petitioner's license reinstatement by incorrectly concluding that the OAH determined that petitioner requested the blood testing and performing

the fact-intensive *Talbert* analysis itself, finding prejudice to petitioner from the absence of the results. However, the OAH's order plainly states that "*The Investigating Officer* requested the Petitioner submit to a blood draw, [and] the Petitioner agreed" and "Petitioner did not initiate the blood draw[.]" (emphasis added). In contrast, petitioner testified that he requested the blood draw to demonstrate the absence of impairment. This dispute was expressly recognized by the circuit court: "It is disputed who requested the blood test." Accordingly, the record reflects a material dispute of fact about who requested the test that was never resolved by the fact-finder below for purposes of implicating the *Talbert* analysis in the first instance; the majority's statement to the contrary is plainly incorrect.[3]

However, setting aside the Court's incorrect statement of the lower tribunals' determination of this pivotal issue, the *Talbert* factors themselves are expressly reserved to the "trier of fact" to determine "what consequences should flow" from the absence of driver-requested blood test results. *See Talbert,* syl. pt. 6. It does *not* authorize this Court under any circumstances to simply decide, in the first instance, the degree of prejudice to a driver from the absence of the results and the consequence.

Therefore, while I agree that the reinstatement of petitioner's license must be affirmed, I do so on the grounds previously articulated in my dissent in *Frazier v. Null*, ___ W. Va. ___, ___, 874 S.E.2d 252, 265 (W. Va. 2022) (Wooton, J., dissenting). As in *Null*, the OAH did not resolve the material conflict in the evidence as to who requested the test, nor did it reach the ultimate issue of whether petitioner was DUI. Because the OAH has been dissolved, there is no fact-finder to which to remand this matter to determine 1) who requested the blood testing; 2) if it was petitioner, what consequences must flow from his failure to receive the results; and 3) whether petitioner was driving under the influence. As explained in my dissent in *Null*, the Legislature expressly approved dismissal of unresolved administrative DUI revocations at the time of OAH's dissolution. *See* W. Va. Code § 17C-5C-1a(c)(1) (2020) ("If any appeal of a revocation or suspension order, described in § 17C-5C-3(3) of this code, is pending before the [OAH] on or after July 1, 2021, the underlying revocation or suspension order shall be dismissed."). It did not make any allowance for another fact-finding tribunal to replace the OAH and most certainly did not authorize this Court to become one. *See Null,* ___ W. Va. at ___, 874 S.E.2d. at 264 (Wooton, J., dissenting) (observing majority exceeded its statutory authority to review administrative revocations and "for the first time established the Supreme Court of Appeals as a fact-finding entity."). For that reason, the OAH and circuit court's reinstatement of petitioner's license must be permitted to stand and the proceeding dismissed.

Accordingly, I respectfully concur.

---

[3] That said, however, I reiterate my previously stated position that the failure to provide blood testing results *regardless of who requested the testing* constitutes a due process deprivation requiring dismissal of the license revocation. Nevertheless, the fact remains that the current state of our law recognizes such a right only where the driver requests the testing and the fact-finder determines that the *Talbert* factors require dismissal. *See Talbert*, 245 W. Va. at 310, 858 S.E.2d at 935 (Wooton, J., dissenting) ("A due process right is only as valuable as the remedy it affords.").

Armstead, Justice, dissenting:

The majority decision affirms the order of the Office of Administrative Hearings ("OAH"), as affirmed by the circuit court, based on "*evidence* that Mr. Simpkins requested the administration of a blood test" (emphasis added) and based upon our holding in Syllabus Point 6 of *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021). Because I believe that the majority decision plainly conflicts with our more recent holding in *Frazier v. Null*, ___ W. Va. ___, 874 S.E.2d 252 (2022), I respectfully dissent.

In *Null*, a driver was stopped for a traffic offense. *Id.* at ___, 874 S.E.2d at 254. During the stop, the investigating officer developed reasonable grounds to believe that the driver was operating the vehicle under the influence of drugs or controlled substances. *Id.* at ___, 874 S.E.2d at 255. The driver's gait and appearance suggested impairment, and the driver failed three field sobriety tests. *Id.* at ___, 874 S.E.2d at 254. The driver also admitted to using marijuana. *Id.* The officer placed the driver under arrest and later transported the driver to a hospital, where a sample of his blood was drawn for testing. *Id.* According to the D.U.I. Information Sheet ("Information Sheet"), the officer requested the blood draw. *See id.* at ___, 874 S.E.2d at 254-256. The driver's sample, however, was not analyzed and was later destroyed. *Id.* at ___, 874 S.E.2d at 254.

At the hearing before OAH, the driver testified that *he* requested the blood draw and attempted to explain away his admission to smoking marijuana. *Id.* at ___, 874 S.E.2d at 255. No testimony from the officer rebutted the driver's testimony on these issues, *id.* at 254, yet, after hearing the driver's testimony, OAH found that the driver admitted to smoking marijuana and that the officer requested the blood draw, *id.* at ___, 874 S.E.2d at 255. Nevertheless, OAH reversed the driver's revocation, concluding "that the State violated . . . [his] due process rights under West Virginia Code § 17C-5-9 (eff. 2013) when it deprived him of the opportunity to present potentially exculpatory evidence as a result of his blood sample." *Null*, ___ W. Va. at ___, 874 S.E.2d at 255-56.

When the Commissioner of the Division of Motor Vehicles (the "Commissioner") appealed to circuit court, the circuit court affirmed OAH on slightly different grounds. *Id.* at ___, 874 S.E.2d at 256. Though the circuit court credited the driver's testimony about who had requested the blood draw—professing that it was "hesitant to disregard . . . live testimony . . . under oath in favor of a piece of paper"—it also concluded that, for purposes of the driver's statutory and due process rights under West Virginia Code § 17C-5-9, it did not matter who requested the blood test. *Null*, ___ W. Va. at ___, 874 S.E.2d at 256.

Those were the facts in *Null*, and they are similar to the facts in this case. Yet just five months ago, we reversed the circuit court on these facts, finding that "both OAH and the circuit court erred when they concluded that the destruction of Mr. Null's blood, without testing, violated his rights under West Virginia Code § 17C-5-9[,]" *Null*, ___ W. Va. at ___, 874 S.E.2d at 258. On the contrary, we deferred to OAH's finding of fact about who had requested the blood test and determined that West Virginia Code § 17C-5-6 (eff. 2013) was the relevant procedural statute. *Null*, 874 S.E.2d at 258.

5

Despite these clear holdings, the majority decision reflects the same errors we rejected in *Null*. First, the majority decision ignores the standard of review. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4[] . . . ." Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W. Va. 588, 590, 474 S.E.2d 518, 520 (1996). Those statutory standards require us to accord "findings of fact by the administrative officer . . . deference *unless the reviewing court believes the findings to be clearly wrong*." *Id.* (emphasis added). Finding that Mr. Simpkins *testified* "that he requested the administration of a blood test" and finding "*evidence* that Mr. Simpkins requested the administration of a blood test" (emphasis added) are not the same thing as concluding that OAH's findings of fact to the contrary are clearly wrong. Without a finding of clear error, we are not at liberty to disregard the OAH's findings of fact. Because I find no reason to believe that the OAH was clearly wrong, I believe we are compelled to assume that the investigating officer, not Mr. Simpkins, requested the blood test in this matter.

This leads to the majority decision's second error—deciding the case under *Frazier v. Talbert*. In *Null*, we drew a clear distinction between blood test questions that fall under West Virginia Code § 17C-5-6 and those that fall under § 17C-5-9. We held that, while "Section 6 pertains to blood samples requested, in the first instance, by an *investigating officer*[,] Section 9 pertains to blood samples requested by a *driver*." *Null*, ___ W. Va. at ___, 874 S.E.2d at 258. Syllabus Point 6 of *Talbert*, by its express terms, only applies when "a driver demands a blood test pursuant to West Virginia Code § 17C-5-9 . . . ." *Id.*, 245 W. Va. at 295, 858 S.E.2d at 919. Because we decided *Null* under § 17C-5-6 and not under § 17C-5-9, *Null*, ___ W. Va. at ___, 874 S.E.2d at 258, we had no basis to consider the "degree of negligence or bad faith" that led to the blood sample's destruction, the "importance of the blood test evidence" in comparison to the "probative value and reliability" of the remaining evidence, or the "sufficiency of the other evidence produced" at the hearing before OAH, *Talbert*, 245 W. Va. at 295, 858 S.E.2d at 919, syl. pt. 6, in part.

Because I believe that our decision in *Null* is squarely on point in this case, I also believe that reversing Mr. Simpkins's administrative license revocation was error. As in *Null*, "there is no evidence that Mr. [Simpkins] ever requested any information regarding the test to be performed on his blood sample and no evidence that he ever requested an opportunity to perform his own test." *Null*, ___ W. Va. at ___, 874 S.E.2d at 258. Accordingly, we have no basis for finding that Mr. Simpkins's due process rights were violated by the blood sample's destruction. *Id.* at ___, 874 S.E.2d at 259.

Therefore, the question becomes whether the OAH's findings of fact show that Mr. Simpkins "was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed [controlled substances or drugs] . . . ." Syl. Pt. 6, in part, *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020). I believe that they do. OAH found by a preponderance of the evidence (1) that the officer stopped Mr. Simpkins for "inoperable taillights"; (2) that Mr. Simpkins exhibited numerous signs of intoxication, including unsteadiness while standing and walking, blood shot and glassy eyes, and unsatisfactory performance on three field sobriety tests; and (3) that Mr. Simpkins "admitted to ingesting marijuana[.]" Though Mr. Simpkins attempted to qualify this admission in his testimony, OAH also found that the officer

6

"smelled a strong odor of marijuana" when Mr. Simpkins left the vehicle and that the police dog "reacted to the driver's side door, indicating the presence of a drug or controlled substance." I believe that these findings more than support the conclusion that Mr. Simpkins was driving under the influence of controlled substances or drugs on October 21, 2013, and that the circuit court erred in affirming OAH's final order that overturned the Commissioner's revocation order. Therefore, I respectfully dissent.