**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Everett Frazier, Commissioner,
West Virginia Division of Motor Vehicles,
Petitioner Below, Petitioner

**vs.)  No. 20-0103** (Kanawha County 19-AA-10)

Brian Lee Raschella,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("the commissioner"), appeals the order of the Circuit Court of Kanawha County, entered on January 13, 2020, affirming the administrative reinstatement of Respondent Brian Lee Raschella's motor vehicle operator's license.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review[2], the briefs, and the record presented, the Court finds that the commissioner's order of revocation was improvidently reversed. Accordingly, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for reversal by memorandum decision.

An officer with the Marion County Sheriff's Department was dispatched in the morning hours in response to reports of an erratically-driven car that was pulled into a car dealership's lot.

---

[1] Petitioner appears by counsel Janet E. James. Respondent appears by counsel Neal Jay Hamilton.

[2] The standard of review is as follows:

> "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996)." Syl. Pt. 1, *Dale v. Odum*, 223 W. Va. 601, 760 S.E.2d 415 (2014).

Syl. Pt. 1, *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020).

1

When the officer arrived at the lot, he found Mr. Raschella unconscious in the driver's seat of his vehicle. The officer noted indications of impairment, and Mr. Raschella admitted that he had ingested controlled substances that were prescribed to him. The officer recovered the controlled substances at the scene, but without accompanying evidence that they were dispensed through prescription.

The officer administered field sobriety tests that suggested Mr. Raschella was impaired, and thereafter arrested him for driving under the influence of controlled substances. After his arrest, Mr. Raschella asked for a blood test, and the officer drove him to a local hospital where a sample was drawn. The officer sent the blood sample to the West Virginia State Police Laboratory for testing. According to the appendix record on appeal, the whereabouts of the sample are unknown.

The commissioner revoked Mr. Raschella's motor vehicle operator's license, and Mr. Raschella requested an administrative hearing before the Office of Administrative Hearings ("OAH"). The OAH conducted a hearing and found that the commissioner's failure to provide blood test results to Mr. Raschella after Mr. Raschella requested a blood test was a per se denial of his statutory and due process rights under West Virginia Code § 17C-5-9.[3] The commissioner appealed the OAH's final order to the Circuit Court of Kanawha County which affirmed the final order, explaining that, in situations where the driver requests a blood draw, the driver is guaranteed by the provisions of West Virginia Code § 17C-5-9 that the blood sample will be tested and made available to the driver for independent analysis.

We recently clarified that the absence of the results of blood testing, even when requested by a driver facing revocation, is not fatal to the administrative revocation.

> In a proceeding involving the revocation of a driver's license for driving under the influence of alcohol, controlled substances, or drugs where a driver demands a blood test pursuant to West Virginia Code § 17C-5-9 [2013], but the test is never given, a chemical analysis of the blood that is withdrawn is never completed, or the blood test results are lost, the trier of fact must consider (1) the degree of negligence or bad faith involved in the violation of the statute; (2) the importance of the blood test evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency

---

[3] That section provides:

> Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

of the other evidence produced at the proceeding to sustain the revocation. The trier of fact must consider these factors in determining what consequences should flow from the absence of the blood test evidence under the particular facts of the case.

Syl. Pt. 6, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021).

The evidence presented to the OAH overwhelmingly established Mr. Raschella's intoxication. The investigating officer found Mr. Raschella unconscious in the driver's seat of his automobile, after police received detailed reports about the location of Mr. Raschella's automobile and the manner in which it had been driven. Mr. Raschella admitted that he had ingested controlled substances, and the officer found those substances in Mr. Raschella's possession. Moreover, and critical to our analysis under *Talbert*, there is no evidence of fault in the loss or destruction of Mr. Raschella's blood test sample, and certainly no evidence that the sample was mishandled in bad faith. The circuit court suggests that there was speculation that the sample was ordered destroyed by the State, but such speculation does not address the evidentiary requirements described in *Talbert*.

For the foregoing reasons, we reverse the circuit court's January 13, 2020, order and remand this case to the circuit court for reinstatement of the commissioner's order administratively revoking Mr. Raschella's motor vehicle operator's license.

Reversed and remanded.

**ISSUED:** September 20, 2022

**CONCURRED IN BY:**

Chief John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

WOOTON, J., dissenting:

I dissent to the majority's reversal and remand of this matter for reinstatement of petitioner's license revocation. As I have previously expressed, where driver-demanded blood testing results are not provided, this Court neither sits as a finder of fact with respect to administrative DUI revocations nor has the jurisdiction to conduct the fact-intensive analysis

3

required by *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021). *See Frazier v. Null*, \_\_\_ W. Va. \_\_\_, \_\_\_, 874 S.E.2d 252, 259-265 (W. Va. 2022) (Wooton, J., dissenting).

In this case, the Office of Administrative Hearings (hereinafter "OAH") expressly found that the driver requested the blood test results which were lost or destroyed. Accordingly, the OAH reversed the revocation order without reaching the issue of whether the driver was DUI; this ruling was then affirmed by the circuit court. The majority reverses the OAH and circuit court by evaluating—for the first time—the *Talbert* factors and summarily concluding that the absence of driver-demanded blood testing results was not the result of bad faith. It then engages in an assessment of the quality and quantity of evidence presented and summarily concludes that the "evidence presented to the OAH overwhelmingly established [petitioner's] intoxication"—a determination never reached by the OAH. Again, these factual determinations cannot be made by this Court in the first instance. Syllabus point six of *Talbert* expressly states that the "trier of fact" must determine "what consequences should flow" from the absence of the results. *See Talbert*, syl. pt. 6. This Court is not and never has been a trier of fact.

Further, the *Talbert* factors do not serve as a surrogate to find DUI where no fact-finder has yet reached that issue. As I have previously observed, the failure of the OAH to reach the issue of DUI has consistently been held by this Court to require remand for that factual determination. *See Null*, \_\_\_ W. Va. at \_\_\_, 874 S.E.2d at 260 (Wooton, J., dissenting) ("For decades this Court has found this failure to resolve credibility issues and/or reach the ultimate issue of DUI to be reversible error necessitating remand for resolution of such disputes").[4] The lack of a fact-finder to which to remand this matter mandates affirmance of the license reinstatement, consistent with the Legislature's edict that administrative DUI revocations that remain unresolved as of the dissolution of the OAH must be dismissed. *See* W. Va. Code § 17C-5C-1a(c)(1) (2020)

---

[4] *See also Frazier v. Bragg*, 244 W. Va. 40, 49, 851 S.E.2d 486, 495 (2020) ("[B]ecause the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of Mr. Bragg's driver's license for driving under the influence of alcohol, controlled substances and/or drugs."); *Frazier v. Workman*, No. 20-0035, 2021 WL 653201, at *3 (W. Va. Feb. 19, 2021) (memorandum decision) ("Having determined that the circuit court erred in affirming the OAH's order reversing the revocation of respondent's license based only on the fact that respondent's blood sample was not tested, and because the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of respondent's driver's license."); *Frazier v. Fowler*, No. 20-0076, 2021 WL 1110376, at *3 (W. Va. Mar. 23, 2021) (memorandum decision) (same); *Frazier v. Bowman*, No. 20-0034, 2021 WL 1110372, at *4 (W. Va. Mar. 23, 2021) (memorandum decision) (same); *Frazier v. Agin*, No. 20-0038, 2021 WL 1110653, at *3 (W. Va. Mar. 23, 2021) (memorandum decision) (same); *Frazier v. Murphy*, No. 20-0092, 2021 WL 1821456, at *3 (W. Va. May 6, 2021) (memorandum decision) (same); *Frazier v. Goodson*, No. 20-0236, 2021 WL 1821454, at *3 (W. Va. May 6, 2021) (memorandum decision) (same); *Frazier v. Fazio*, No. 20-0102, 2021 WL 1821450, at *3 (W. Va. May 6, 2021) (memorandum decision) (same); *Frazier v. Gilbert*, No. 20-0310, 2021 WL 2581707, at *4 (W. Va. June 23, 2021) (memorandum decision) (same); *Frazier v. Parker*, No. 20-0790, 2021 WL 2581718, at *3 (W. Va. June 23, 2021) (memorandum decision) (same).

("If any appeal of a revocation or suspension order, described in § 17C-5C-3(3) of this code, is pending before the [OAH] on or after July 1, 2021, the underlying revocation or suspension order shall be dismissed.").

Because the OAH has been dissolved, a majority of this Court has reconstituted itself as a fact-finding body to ensure that these license revocations stand. However, this Court cannot sit as a fact-finder merely because "it lacks a procedurally sustainable method for remanding this action." *Id.* at ___, 874 S.E.2d at 260 (Wooton, J., dissenting). To do so constitutes not only a due process deprivation of the highest order, but a violation of fundamental tenets of appellate review. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 176 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."); *BouSamra v. Excela Health*, 210 A.3d 967, 979-80 (Pa. 2019) ("[I]t is not an appellate court's function to engage in fact finding." (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986))).

Accordingly, I respectfully dissent.