723 S.E.2d 388

STATE of West Virginia, Plaintiff
Below, Appellant

v.

Sandy Martin COOK, Defendant
Below, Appellee.

No. 35465.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 15, 2010.

Decided Oct. 28, 2010.

James M. Cagle, Charleston, WV, for Appellant.

Barbara H. Allen, Scott E. Johnson, Attorney General's Office, Charleston, WV, for Appellee.

PER CURIAM:

Appellant Sandy Cook seeks a reversal of his conviction on sixteen counts of sex-related offenses.[1] As grounds for the reversal, Appellant asserts due process violations stemming from both pre- and post-accusatory delay; improper application of case law; cumulative error; and disproportionate sentencing. Upon our careful consideration of the assignments of error raised by Appellant, we do not find that the trial court committed error. Accordingly, we affirm.

## I. Factual and Procedural Background

In the September 2008 term of court, Appellant was charged with twenty-two sexual offenses against four victims who were each minors at the time of the alleged crimes.[2] All of the offenses were alleged to have occurred fifteen to seventeen years before the issuance of the indictment.[3] The four male victims came to know and have contact with appellant, who was the pastor of the Shrewsbury Church of God,[4] when they were twelve or thirteen years of age.[5] The alleged crimes took place either in the church van or in the parsonage. One of the victims, Michael L., actually lived in the church parson-

---

1. The convictions were for sexual assault in the third degree under West Virginia Code § 61–8B–5 (2005) and sexual abuse by a parent, guardian, or custodian under West Virginia Code 61–8D–5 (2005).

2. The accusers were Jose S., Michael B., David M., and Michael L. Because the victims were minors at the time of the alleged abuse, we will identify them by initials. *See Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. The State nol-prossed the two counts involving David M., counts thirteen and fourteen, when the trial court refused to permit it to amend those counts to conform to Mr. M.'s testimony that the acts involving him had occurred nineteen years earlier.

4. Appellant was a registered nurse who was employed as the Director of the Cardiac Cath Lab at Charleston Area Medical Center, Memorial Division.

5. According to the State, all of the victims were extremely poor and lacked a father figure.

age with Appellant and his mother beginning in March 1995.

The allegations at issue were first reported when Jose S. contacted Trooper Malcolm Napier on August 3, 2007. Two days later, Trooper Napier contacted Michael L. to inquire about Appellant's past behavior. On August 19, 2007, Trooper Napier contacted Michael B. to speak with him about Appellant's behavior. Trooper Napier obtained a warrant for Appellant's arrest on September 3, 2007. After learning of Appellant's arrest, David M. contacted Trooper Napier on September 4, 2007.

The case was tried over a five-day period beginning on February 23, 2009, and culminated with Appellant being convicted on all sixteen counts of sexual abuse that went to the jury on February 27, 2009. By entry of the trial court's final order on May 21, 2009, Appellant was sentenced to a term of not less than twenty and up to sixty years in prison.[6] Through this appeal, Appellant seeks a reversal of his conviction.

## II. Standard of Review

■ Because the issues Appellant raises concern matters of law rather than matters typically left to the discretion of the trial judge, our review is plenary. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With this standard in mind, we proceed to determine whether the trial court committed error.

## III. Discussion

### A. Preindictment Delay

The primary error that Appellant asserts stems from the lengthy period of time between the incidents underlying his conviction and the prosecution of those offenses. He asserts that "gross and extreme" delay between the incidents and the indictment impaired his ability to defend against those charges and thereby violated his right to due process. Appellant argues that he is entitled to have the trial court reconsider its ruling on his motion to dismiss for gross preindictment delay based on our issuance of a decision shortly after his conviction that clarified the standard for demonstrating a due process violation predicated on preindictment delay.[7]

■ In *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009), this Court revisited its earlier rulings in *State ex rel. Leonard v. Hey*[8] and *Hundley v. Ashworth*[9] on the issue of preindictment delay. Upon a review of those rulings, we determined that our precedent of recognizing a lengthy preindictment delay as presumptively prejudicial for purposes of establishing a due process violation was "contrary to the clear weight of authority throughout this country." *Facemire*, 223 W.Va. at 601, 678 S.E.2d at 854. As a result, we held in syllabus point two of *Facemire*:

> To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice. To the extent our prior decisions in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W.Va.1980), *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), and their progeny are inconsistent with this holding, they are expressly overruled.

223 W.Va. at 595, 678 S.E.2d at 848.

■ In *Facemire*, we also addressed the requirement imposed on a defendant under *Hundley* to "prove that the State's delay in bringing the indictment was a deliberate device to gain an advantage over him and that

---

6. The sentences for the four convictions under W.Va.Code § 61–8D–5 run consecutively while the twelve sentences under W.Va.Code § 61–8B–5 run concurrently.

7. The decision, *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009), was issued on June 5, 2009.

8. 269 S.E.2d 394 (W.Va.1980).

9. 181 W.Va. 379, 382 S.E.2d 573 (1989).

it caused him actual prejudice in presenting his defense." 181 W.Va. at 380, 382 S.E.2d at 574, syl. pt. 2, in part. After considering the alternative approach employed by the Fourth Circuit Court of Appeals for analyzing preindictment delay, we determined that fundamental fairness concerns at the heart of the Due Process Clause compelled the elimination of a defendant's burden to demonstrate that the state gained an advantage through preindictment delay. *See Facemire,* 223 W.Va. at 603, 678 S.E.2d at 856. Adopting the balancing test used by the Fourth Circuit, we held in syllabus point three of *Facemire:*

> In determining whether preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the initial burden is on the defendant to show that actual prejudice has resulted from the delay. Once that showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. In balancing these competing interests, the core inquiry is whether the government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play. To the extent our prior decision in *Hundley v. Ashworth,* 181 W.Va. 379, 382 S.E.2d 573 (1989), and its progeny are inconsistent with this ruling, they are expressly overruled.

223 W.Va. at 595–96, 678 S.E.2d at 848–49.

Appellant argues that the trial court should be required to reconsider his motion to dismiss for preaccusation delay in light of this Court's decision in *Facemire.*[10] As support for his position, Appellant relies upon

our decision in *Facemire* to eliminate a defendant's burden of establishing that the prosecutorial delay in issue was tactical in nature as part of establishing a due process violation based on preindictment delay. 223 W.Va. at 603, 678 S.E.2d at 856. Because the trial court's ruling included a finding that there was no evidence that the state's delay in prosecuting him was purposeful,[11] Appellant contends that he was held to a stricter standard for purposes of establishing a due process violation based on preindictment delay than what is now required under *Facemire.*[12]

What Appellant overlooks in making this argument is the fact that the trial court did consider and rule on the pivotal issue of whether he had established actual prejudice. That is the key critical first component of the test we articulated in *Facemire.* As we held in *Facemire:* "[T]he initial burden is on the defendant to show that actual prejudice has resulted from the delay." 223 W.Va. at 595, 678 S.E.2d at 848, syl. pt. 3, in part. Only after a defendant has established actual prejudice resulting from preindictment delay does the trial court proceed to the next step, which is to "balance the resulting prejudice against the reasonableness of the delay." *Id.* at 595, 678 S.E.2d at 848, syl. pt. 3, in part.

Addressing the grounds offered by Appellant in support of his motion to dismiss, the trial court considered Appellant's contention that a lengthy preindictment delay prejudicially impacts a defendant's ability to defend against the charges due to faded memories, lost evidence, and unavailable witnesses. As an initial matter, the trial court rejected Appellant's argument that a defendant necessarily loses his right to remain silent where the delay in accusation is extreme.[13] Re-

---

**10.** He notes that his case was in the appeal stage when the decision was issued.

**11.** The record indicates that Appellant's counsel admitted that he could not prove that the State's delay was for the purpose of "gain[ing] some tactical advantage."

**12.** This contention of being held to a stricter standard could prove true only if Appellant established actual prejudice from the delay and then the trial court proceeded, under *Hundley,* to determine that, notwithstanding the showing of ac-

tual prejudice, no due process violation resulted because the State had not orchestrated the delay to gain a tactical advantage. Because Appellant did not establish actual prejudice, the trial court's ruling on the motion to dismiss for preindictment delay did not turn on his inability to establish that the delay was for strategical purposes.

**13.** Appellant suggests that the unavailability of evidence, both testimonial and documentary in nature, forces a defendant to take the stand in his own defense when there is an extreme delay

sponding to the temporal-related impact on the defense's ability to gather evidence, the trial court observed that the state's ability to prosecute such cases is similarly hampered by those same factors. Turning to the issue of whether the State gained a tactical advantage under the then-controlling decision of *Hundley* by the timing of the prosecution, the trial court found that there was "no delay to gain a tactical or otherwise advantage." As the trial court expounded: "This is not a situation where the State knew about the charges or the allegations for 15 or 17 years and sat and did nothing about it. These are allegations that simply were not made until years and years later after the alleged acts occurred." Reaching the pivotal inquiry of actual prejudice, the trial court opined:

> "I do not believe in this particular case there is evidence, taking into consideration the defendant's affidavit and the arguments that have been made here, that there is such evidence which would indicate that there is at this point actual prejudice to prevent the defendant from being able to put forth his defense."

Accordingly, the trial court denied Appellant's motion to dismiss for prosecutorial delay.[14]

The grounds upon which Appellant relied to assert prejudice as a result of the lengthy delay were set forth in his affidavit. Appellant identified four deceased individuals upon whom he would have relied for purposes of defending against the subject charges. The witnesses who were unavailable to Appellant due to death included his mother, Audrey C. Cook,[15] Paula Farley, a girlfriend of Michael B.; Mallie Melven, the church's district overseer; and Beulah West, the clerk of the church. In addition to the deceased witnesses, Appellant averred that numerous records and materials were missing "which would be useful in my defense." Appellant identified the missing documents as credit card records, checking account records, voca-

tional school records, church records, and his mother's journals.

In reviewing the record made by Appellant on the issue of establishing actual prejudice—a showing that was required by *Hundley* and a showing that is still required under *Facemire*—it is apparent that the averments of prejudice that he relies upon amount to nothing more than "dimming memories and the passage of time." *Facemire*, 223 W.Va. at 603, 678 S.E.2d at 856. As we explained in *Facemire*, " 'vague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay.' " *Id.* at 603, 678 S.E.2d at 856 (*quoting U.S. v. Beszborn*, 21 F.3d 62, 67 (5th Cir.1994)). Vague and conclusory allegations of prejudice, as we made clear in *Facemire*, are simply not sufficient. Not only must the contemplated testimony of a missing or deceased witness be demonstrated with ample specificity, but the impact of that missing testimony on the defense must be shown. To rely upon presumption or inference, as Appellant does here, by representing as fact that his mother would have been able to contradict the evidence offered by the State against him while offering little in the way of specifics regarding her expected testimony is clearly insufficient under our holding in *Facemire*. The degree of specificity required to establish actual prejudice is that which will solidly demonstrate how a defendant has been "meaningful[ly] impair[ed]" in conducting his defense. *Facemire*, 223 W.Va. at 604, 678 S.E.2d at 857. As we held in syllabus point four of *Facemire*,

> To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that

---

between the alleged criminal offense and the prosecution of that offense.

**14.** The trial court acknowledged that the due process analysis for considering preindictment delay does not take into consideration the legal

impact of a victim's delay in reporting allegations of wrongdoing to law enforcement or a prosecutorial agency.

**15.** Mrs. Cook died on July 17, 2008.

the disposition of the criminal proceeding was or will be likely affected.

223 W.Va. at 596, 678 S.E.2d at 849.

Based on our review of the record, Appellant has not demonstrated that his defense was "meaningfully impaired" as a result of the unavailable witnesses or evidence. *Id.* at 604, 678 S.E.2d at 857. What he has proffered in his attempt to demonstrate actual prejudice are simply "garden variety" averments based on the passage of time—the inability to fully recall events or to produce witnesses or documentation to refute the State's evidence.[16] As far as the deceased individuals, nothing in Appellant's affidavit demonstrates that any of those witnesses could provide evidence to refute the allegations of sexual misconduct that allegedly took place in the church van. And, as to the allegations of sexual abuse that allegedly occurred in the church parsonage, the mere fact of Appellant's mother's residence in the church parsonage does very little, standing on its own, to disprove the allegations. From the affidavit, it appears that Appellant would have sought the testimony of each of the deceased witnesses[17] for the purpose of bolstering his theory that the accusers were motivated to bring false charges against him based on the unsuccessful attempt of one of the accusers to gain control of the Shrewsbury Church of God.[18] Not only was the jury fully apprised as to the defense's theory of the underlying motivation for the charges of sexual abuse, but the panel also heard testimony from various witnesses regarding the character of the various accusers and specifically their trustworthiness. Given that the jury heard both testimony and argument as to Appellant's theory regarding the accusers' wrongful motivation, we are not persuaded that the testimony of those now-deceased "witnesses" would have impacted the outcome of the trial in favor of the defense.

With regard to Appellant's claim that missing documentary evidence—financial records, church records, vocational school records, and journals—"would be useful in my defense," this is the type of imprecise allegation that we referenced in *Facemire* as being insufficient to establish "substantial evidence of actual prejudice." 223 W.Va. at 604, 678 S.E.2d at 857. Appellant argues that some of the allegedly irretrievable financial documents could have been used to respond to the State's contention that Appellant purchased certain items of clothing for Mr. S.[19] and that the church and vocational records could have been relied upon to document his whereabouts on a given date.[20] Appellant related that his mother's journals "would have included mention of disagreements between the accuser [Michael] L.[ ] and me." Apart from these stated reasons, Appellant offers little else to explain how the "missing" documents were needed to defend against the subject charges. Accordingly, we find the need for such documents to be vague in nature and we further conclude that it is unlikely that those documents could have had a "meaningful impact" on the defense. Just as with the testimony of the deceased witnesses, there is nothing in the missing documents that Appellant has identified that is likely to have altered the outcome of his trial.

16. Much of what Appellant complains about is a matter of policy. Central to his due process argument is criticism regarding the lack of a governing statute of limitations. While we appreciate the concerns Appellant raises with regard to the inherent difficulties that arise when preparing a defense to a time-effected charge, there are clearly countervailing concerns rooted in the protection of the public and the rights of victims. Either way, those arguments are better directed to the Legislature than this Court.

17. Obviously, there is uncertainty as to whether the deceased individuals would have chosen to testify for Appellant. *See Cherry v. State*, 933 So.2d 377, 381 (Ala.Crim.App.2004) (observing that " '[m]erely because appellant alleges that certain dead witnesses would testify for him and in a certain manner does not prove that the potential witnesses would testify in such a manner or even testify at all' ") (quoting *Stoner v. State*, 418 So.2d 171, 180 (Ala.Crim.App.1982)).

18. That individual was Michael L.

19. He sought to show that his mother had purchased some of these items.

20. The need for specific documents to verify Appellant's location on a given date and time is certainly interesting in that he complains that there were few specific dates and times relied upon by the State in prosecuting the charges against him.

Upon our review of the record in this case, we do not find that the trial court committed error in refusing to grant Appellant's motion to dismiss the indictment for preindictment delay. Neither do we find merit in Appellant's argument that the trial court should reconsider its ruling on the motion to dismiss under this Court's decision in *Facemire*. Given Appellant's failure to establish actual prejudice—the first prong of *Facemire*—there would be no point in requiring the trial court to apply the second prong of *Facemire*, which is a balancing of the established prejudice against the state's reasons for the delay in prosecution. *See Facemire*, 223 W.Va. at 595–96, 678 S.E.2d at 848–49, syl. pt. 3. As the record makes clear in this case, the State promptly acted to prosecute Appellant upon its discovery of the subject allegations of sexual abuse.

### B.  Postindictment Delay

Appellant asserts that the delay between his arrest on September 3, 2007, and the issuance of the indictment on September 19, 2008, constitutes a violation of his right to a prompt and speedy trial. *See* U.S. Const. amend. VI; W.Va. Const. art. III, § 14. Citing our recent decision in *State v. Jessie*, 225 W.Va. 21, 689 S.E.2d 21 (2009), Appellant asserts that the twelve-month delay between his arrest and when he was indicted was unreasonable. The specific ground of prejudice upon which Appellant relies to make this claim was the intervening death of his mother on July 17, 2008, during the period after his arrest but before his indictment.

Seeking to "clarify the precise triggering event critical to an analysis of Fifth and Sixth Amendment rights of an accused with regard to allegedly prejudicial delays in prosecution," we held in *Jessie* that "the events occurring within the defendant's chronology should be characterized as pre-accusatory or post-accusatory." 225 W.Va. at 24, 689 S.E.2d at 24, syl. pt. 8, in part. In making this distinction, we explained that "[p]re-ac-

cusatory delays, encompassing the time period before the moment of accusation whether by arrest or indictment, are evaluated under the Due Process provision of the Fifth Amendment" and "[p]ost-accusatory delays, encompassing the time period after the moment of accusation whether by arrest or indictment, are evaluated under the speedy trial provision of the Sixth Amendment." 225 W.Va. at 24, 689 S.E.2d at 24, syl. pt. 8, in part. The delay about which Appellant complains at this juncture is post-accusatory and thus falls under a Sixth Amendment analysis.

■  As we restated in *Jessie*, the test for applying a Sixth Amendment speedy trial analysis is the following:

"A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial." Syl. Pt. 2, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982).

225 W.Va. at 24, 689 S.E.2d at 24, syl. pt. 6.

■  As support for his motion to dismiss the indictment based upon the delay between the initial accusation and the return of the indictment,[21] Appellant cites the death of his mother during the time period between when the case was bound over to the grand jury in September 2007 and when the indictment was returned on September 19, 2008. Referencing the averments pertaining to his mother set forth in his affidavit concerning her residence in the parsonage and her personal knowledge of the accusers,[22] Appellant contends that she was a critical defense witness

---

**21.** This motion was filed by Appellant on January 30, 2009.

**22.** Those averments pertain to the residence of Mrs. Cook in the parsonage, specifically the close proximity of her bedroom to Appellant's bedroom and the purported ability to "easily hear

from one room to the other." Appellant avers that Mrs. Cook had "first hand knowledge of our home environment, the accusers, [and] their reputations." With her death, Appellant avowed that "her ability to corroborate my account of events has been lost."

whose death resulted in enormous and substantial prejudice to his ability to defend himself against the subject charges. He argues that his mother "represented the best possible witness for the defense."

The reason the indictment was not returned sooner was apparently due to the fact that the investigating officer, Trooper Napier, did not present his grand jury report to the prosecutor's office until July 17, 2008. While Appellant questions the fact that this report was presented on the same date as Mrs. Cook's death, there is nothing in the record to suggest that the State intentionally delayed presentment of this matter to the grand jury.[23] Upon our consideration of (1) the twelve-month delay at issue; (2) the reason for the delay in presentment to the grand jury; (3) the Appellant's assertion of his right to a speedy trial; and (4) the prejudice sustained as a result of the delay, we do not find that the trial court committed error in determining that Appellant's Sixth Amendment right to a speedy trial was not violated under the facts of this case.

### C. Retroactive Application of Decisional Law

Appellant asserts that during the time period covered in the indictment, case law had not been developed which recognizes that a babysitter falls under the definition of a "custodian" for purposes of sexual offenses committed under West Virginia Code § 61–8D–5. That decision was reached by this Court in *State v. Stephens*, 206 W.Va. 420, 525 S.E.2d 301 (1999). As a consequence, Appellant argues that his due process rights were violated as he was not on notice that his conduct would constitute a crime at the time of the alleged offenses.[24] Asserting that the use of

the *Stephens* decision as controlling law for the incidents at issue in this case was improper, Appellant argues that he should not have been convicted under West Virginia Code § 61–8D–5.[25]

■ The State responds to this argument by explaining that our decision in *Stephens*, in specific contrast to the two decisions relied upon as support by Appellant,[26] does not involve a situation where the law, or its reach, was altered in an attempt to criminalize previously legal activity. We agree. What *Stephens* did was to determine, by means of statutory interpretation, that a babysitter fell within the statutory use of the term "custodian." Prior to *Stephens*, the issue of whether a babysitter qualified as a custodian under the statute had not been addressed. Because our decision in *Stephens* did not alter the elements of the offense, we do not find reliance on intervening decisional law that evolved between the time of the acts and the prosecution to be violative of Appellant's due process rights. Accordingly, we do not find that the trial court committed error by permitting Appellant to be convicted under West Virginia Code § 61–8D–5.

### D. Cumulative Error

■ In an attempt to locate reversible error, Appellant cites to four evidentiary rulings that the trial court made that, taken together, should require reversal under the doctrine of cumulative error. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from re-

---

**23.** The record reflects that the State received a West Virginia State Police Report of Criminal Investigation for grand jury consideration on July 17, 2008. The next grand jury presentments were scheduled to be returned on July 31, 2008. No grand jury presentments occurred between July 31, 2008, and September 19, 2008, the date on which the indictment was returned against Appellant.

**24.** We find this argument specious as the alleged acts of sexual abuse were clearly criminal conduct at the time when they were committed even if, as Appellant infers, some of those acts should have been prosecuted under the general sexual

abuse statute rather than under the statute aimed at reaching guardians and custodians of minors. *Cf.* W.Va.Code §§ 61–8B–3 to –5 (2005) with 61–8D–5 (2005).

**25.** Appellant was convicted under both a generally applicable sexual abuse statute (61–8B–3) and a specific sexual abuse statute pertaining to certain classes of individuals (61–8D–5).

**26.** *See Marks v. U.S.*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

ceiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error"). While the State concedes that one of the four enumerated evidentiary rulings was error,[27] it argues that the other evidentiary rulings [28] relied upon by Appellant were not an abuse of the trial court's discretion. We agree. Accordingly, we do not find cumulative error justifying a reversal of Appellant's conviction.

### E. Disproportionate Sentencing

Appellant contends that the penalty for a violation of West Virginia Code § 61–8D–5 is overly harsh in comparison to other crimes in this state and in comparison to the penalties set by other jurisdictions for sexual offenses committed by "persons in a position of trust." Based on his "good character, his strong support group, and the psychologist's report, [and] the time frames of the accusations," Appellant argues that the twenty-year minimum sentence imposed by the trial court violates the constitutional requirement that "penalties shall be proportioned to the character and degree of the offense." [29]

The standard by which we examine claims of disproportionate sentencing was set forth in syllabus point five of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what

would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Applying this standard, the State emphasizes the serious nature of the multiple criminal offenses at issue and the undeniable exploitation by Appellant of his position of spiritual guidance and trust with young, impressionable male victims. The State further observes that the trial court could have run all of the sentences consecutively which would have resulted in a much lengthier sentence of 56 to 180 years, rather than the 20 to 60 year sentence that he received. Given the clear legislative decision to impose stiff penalties on specified individuals who commit acts of sexual abuse on children under their care, supervision, or trust,[30] we find no basis for determining that Appellant's sentence was constitutionally disproportionate to the grievous offenses for which he was convicted.[31]

Having determined that the trial court did not commit error in connection with the assignments of error raised by Appellant, we affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

---

27. The trial court refused to allow character witness *Scott Hannigan* to give reputation evidence that Appellant was a law-abiding citizen.

28. The other evidentiary errors that Appellant cites in support of this argument were that the trial court refused to permit him to cross-examine Jose S. about a prior statement made to the police; the trial court refused to allow him to cross-examine Michael B. about allegations he made to church officials years ago; and the trial court overruled two defense objections during the State's cross-examination of Appellant.

29. W.Va. Const. art. III, § 5.

30. The penalty for each offense under W. Va. Code § 61–8D–5 (sexual abuse by a guardian, custodian, or person of trust) is incarceration for ten to twenty years per offense. In contrast, the penalty for each offense under W.Va.Code § 61–8B–5 (sexual assault in the third degree) is one to five years of incarceration.

31. While we found it unnecessary to recount the explicit details of the sexual abuse involved in this case for purposes of resolving the issues raised on appeal, the record of this case makes clear that Appellant took advantage of vulnerable young men in need of both physical and spiritual guidance for purposes of his own sexual gratification.