**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**State of West Virginia,
Plaintiff Below, Respondent**

**vs.) No. 20-0322** (Nicholas County 17-F-64)

**Drexel M.
Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Drexel M., by counsel Steven Nanners, appeals the Circuit Court of Nicholas County's March 9, 2020, sentencing order following his convictions for six counts of first-degree sexual abuse and six counts of sexual abuse by a guardian or custodian.[1] The State of West Virginia, by counsel Holly M. Flanigan, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I.    Factual and Procedural Background

Petitioner was initially indicted by a Nicholas County grand jury in May of 2002, and he was charged with one count of first-degree sexual assault of J.B., one count of first-degree sexual abuse of J.B., and nine counts of first-degree sexual abuse of F.B.[2] In November of 2002, the circuit court dismissed the 2002 indictment, without prejudice, after petitioner successfully challenged the admissibility of his statement to law enforcement. As to the statement, the circuit court found that law enforcement took petitioner's statement in violation of his Sixth Amendment

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Case No. 02-F-36.

1

right to counsel. When the State noted that the suppressed statement "was a big basis of our indictment[,]" the circuit court dismissed the indictment without prejudice.

Petitioner was indicted again in May of 2017. As to J.B., petitioner was indicted on one count of first-degree sexual assault, one count of first-degree sexual abuse, and one count of sexual abuse by a parent, guardian, or custodian. As to F.B., petitioner was charged with four counts of first-degree sexual abuse and four counts of sexual abuse by a parent, guardian, or custodian.

During the 2017 grand jury proceedings, Deputy Jared Bennett was asked by a member of the grand jury about why it had taken so long for presentment of the indictment since the crimes alleged had occurred so long ago. Deputy Bennett replied:

> He [the defendant] was interviewed by Deputy Paul O'Dell and Tpr. Mankins back in 2000. His attorney got up and left during the interview, which attorneys can't do that- - so, when he left, they threw out his statement that he had given them, and the case was dismissed without prejudice, which that means that it can be brought back any time, but what I think is – It just, you know, kind of fell under the – wayside and was forgotten – so that's – that's why the case was never taken to trial.

Petitioner moved to dismiss the 2017 charges, arguing that the delay between the 2002 dismissal and the 2017 indictment violated the three-term rule. The circuit court denied petitioner's motion finding that there was no violation of the three-term rule.

An unsigned memorandum from the prosecuting attorney in the 2002 case was revealed during a discovery conference on the 2017 charges, which provided that the victims' mother had initiated charges of molestation or abuse against four men. Two of these individuals died prior to petitioner's trial on the 2017 indictment. Additionally, two other individuals who allegedly overheard the victims' mother say that she intended to extort money from petitioner in 2002, died before the trial on the 2017 charges.

Petitioner was tried in 2020, and the jury found him guilty of six counts of first-degree sexual abuse and six counts of sexual abuse by a guardian or custodian. Petitioner filed a post-trial motion and again raised the issue of a speedy trial violation. After considering the motion, the circuit court reaffirmed its ruling that no speedy trial violation occurred in petitioner's case.

The circuit court entered its sentencing order on March 9, 2020. Petitioner then filed this appeal.

## II.    Standard of Review

In challenging his convictions and claiming entitlement to a new trial, petitioner raises twenty assignments of error. Our general standard of review is as follows:

2

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Where specific standards are necessary to address petitioner's assignments of error, they are provided below.

### III.    Discussion

Of petitioner's twenty assignments of error, his first four concern the circuit court's denial of his motion to dismiss the indictment, and the remainder concern various trial and post-trial rulings. In arguing that the court erred in denying his motion to dismiss the indictment, petitioner first argues that the circuit court's failure to dismiss the 2017 indictment resulted in a violation of his right to a speedy trial. Respondent maintains that petitioner's speedy trial rights were not implicated where the initial indictment was dismissed. Upon a review of the record and our jurisprudence on this issue, we agree with respondent.

West Virginia Code § 62-3-21 provides:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

Thus, a person who is charged with a felony shall be discharged from prosecution for that felony if three terms of court pass without trial after the presentment or indictment. While the prosecution is required to provide a trial without unreasonable delay, the accused may not count in his favor "any term of the court which occurred in part during the time he was without jurisdiction of the court." *State v. Foddrell*, 165 W. Va. 540, 545, 269 S.E.2d 854, 858 (1980) (citation omitted).

Excluding the terms of court where there were no charges pending against petitioner comports with the purpose of the speedy trial provision. As the United States Supreme Court has explained, "the Speedy Trial Clause's core concern is impairment of liberty." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986).

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8 (1982). "Once criminal charges are dismissed, the speedy trial guarantee is no longer applicable." *Id.*

Petitioner relies on *State v. Carrico*, 189 W. Va. 40, 427 S.E.2d 474 (1993), and *State v. Crawford*, 83 W. Va. 556, 98 S.E. 615 (1919), in support of his assertion that dismissal of the 2002 indictment did not toll or restart the running of the three terms of court as contemplated by West Virginia Code § 62-3-21. However, *Carrico* and *Crawford* are both *nolle prosequi* cases, and therefore are fundamentally different than the case presently before this Court.[3] Here, unlike *Crawford* and *Carrico*, the State did not enter a *nolle prosequi* following petitioner's 2002 charges. Instead, the State dismissed petitioner's 2002 case for cause, thereby terminating the criminal prosecution and restoring petitioner's personal liberty.[4] Since the initial indictment was dismissed, the 2002 indictment is not included in a speedy trial analysis. Accordingly, we find that the circuit court did not err when it ruled that petitioner's speedy trial rights were not violated.

Next, petitioner maintains that he was prejudiced by the preindictment delay and the circuit court abused its discretion and when it failed to dismiss the 2017 indictment. Petitioner maintains that the prosecuting attorney can offer no reason why he was not indicted between November 2002 and 2017, noting that no evidence of consequence was gathered during the fifteen-year delay and

---

[3] In *Crawford*, the State entered a *nolle prosequi* in the third term of court following the indictment to avoid operation of the three-term rule. The State then re-indicted petitioner after the three terms of court had lapsed and obtained a conviction. In that matter, the Court rejected the prosecution's manipulation of the three-term rule in an effort to keep Mr. Crawford in jeopardy and reversed the conviction. In *Carrico*, the State also exerted control over the speedy trial time clock by entering a *nollo prosequi*, to buy time after the circuit court refused to grant a motion to continue. The State later re-indicted the defendant and obtained a conviction in the third term after the original indictment.

[4] Petitioner's reliance on *State ex rel. Webb v. Wilson,* 182 W. Va. 538, 390 S.E.2d 9 (1990), is also misplaced as that case is distinguishable from the instant matter. In *Webb,* the indictment was dismissed after three unexcused terms of court had expired. The State then sought to re-indict on the same offenses. In *Webb*, the defendant brought a writ of prohibition and this Court explained that the State was barred from re-indicting petitioner for the same offenses, pursuant to West Virginia Code § 62-3-21.

that several witnesses died during the period of preindictment delay. Respondent contends that the circuit court properly and repeatedly found that this claim was meritless because petitioner failed to show actual prejudice from the delay in prosecution. In this regard, we agree with respondent.

We have held that

[i]n determining whether preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the initial burden is on the defendant to show that actual prejudice has resulted from the delay. Once that showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. In balancing these competing interests, the core inquiry is whether the government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play.

Syl. Pt. 3, in part, *State ex rel. Knotts v. Facemire*, 223 W. Va. 594, 678 S.E.2d 847 (2009).

Further, in *Knotts*, we held that

[t]o demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

*Knotts* at Syl. Pt. 4.

In accordance with *Knotts*, a defendant must make a threshold showing of actual prejudice as a result of preindictment delay before a balancing of the interests is required. Petitioner argues that he was prejudiced by the delay where two of the individuals who were accused of molestation by the victims' mother died prior to the trial on his 2017 indictment and he was robbed of "[a]ny impeachment evidence these deceased witnesses could have provided."[5] However, petitioner's passing reference to "impeachment evidence" does not show prejudice, much less actual prejudice. Although two of these individuals were deceased prior to the trial, petitioner makes no other mention of how this prejudiced him. Such vague and conclusory allegations of prejudice were disavowed by this Court in *State v. Cook*, 228 W. Va. 563, 568, 723 S.E.2d 338, 393 (2010), where we noted:

---

[5] These individuals were identified in a memorandum from the prosecuting attorney's file. Additionally, petitioner maintains that although the circuit court entered an order in the 2002 case requiring that individuals who resided in the home at the time of the alleged acts be deposed, these depositions were not taken prior to the dismissal of the 2002 indictment. Petitioner claims that due to the delay, the whereabouts of some of these witnesses are now unknown and another witness is now suffering from dementia.

Vague and conclusory allegations of prejudice, as we made clear in *Facemire*, are simply not sufficient. Not only must the contemplated testimony of a missing or deceased witness be demonstrated with ample specificity, but the impact of that missing testimony on the defense must be shown. To rely upon presumption or inference, as Appellant does here, by representing as fact that his mother would have been able to contradict the evidence offered by the State against him while offering little in the way of specifics regarding her expected testimony is clearly insufficient under our holding in *Facemire*. The degree of specificity required to establish actual prejudice is that which will solidly demonstrate how a defendant has been "meaningful[ly] impair[ed]" in conducting his defense.

Petitioner also argues that evidence to impeach F.B., J.B., and their mother, was lost with the deaths of two witnesses, who may have overheard the mother say that she intended to extort money from petitioner in 2002. Although these two witnesses were no longer available, another individual testified at length to hearing the same information. Thus, petitioner cannot show that he was prejudiced by the absence of these two witnesses.

Petitioner also maintains that he cannot locate witnesses who were not deposed in the 2002 case. Additionally, he claims that files or statements that were taken by his counsel in 2002 were no longer available. As to these witnesses, we note that a few of the witnesses provided testimony under oath in connection with the 2002 indictment, and were subject to cross-examination. Thus, this testimony could be admissible pursuant to West Virginia Rule of Evidence 804(b)(1). Moreover, the circuit court found that petitioner did not demonstrate that he made serious attempts to locate the other witnesses and show that the information from the witnesses was not available from other sources. Consistent with our established precedent, petitioner bears the burden of showing that preindictment delay violated his due process rights by introducing substantial evidence of actual prejudice that proves he was meaningfully impaired in his ability to defend against the State's charges. Here, he has failed to meet this burden, and therefore this assignment of error fails.

Next, petitioner contends that Deputy Bennett contaminated the grand jury proceedings, prejudiced petitioner, and that the circuit court abused its discretion when it failed to dismiss the 2017 indictment after Deputy Bennett gave the testimony concerning petitioner's statement quoted above before the grand jury, despite the State's agreement that it would not offer evidence of his previously suppressed statement at trial. Respondent maintains that although the 2002 indictment was predicated on petitioner's statement, the 2017 indictment was based entirely on the disclosures of F.B. and J.B., not petitioner's statement. In this proceeding, petitioner's statement was mentioned only in response to a question from the grand jury. Moreover, respondent maintains that the 2017 indictment was facially valid and therefore not subject to attack. We agree with respondent.

In West Virginia, "the validity of an indictment is not affected by the character of the evidence introduced before the grand jury, an indictment valid on its face is not subject to challenge by a motion to quash on the ground the grand jury considered inadequate or incompetent evidence in returning the indictment." *State v. Carter*, 232 W. Va. 97, 101, 750 S.E.2d 650, 654 (2013).

6

Moreover, circuit courts do not routinely peek behind the veil of an indictment to assess the evidence presented to the grand jury, doing so only where fraud exists. Specifically, this court has held that "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d at 844 (1989) (citation omitted).

Based upon our review of the record, the 2017 indictment was facially valid and therefore not subject to attack. Moreover, there was no willful or intentional fraud. Thus, we refuse to peek behind the veil of the indictment, and this assignment of error fails.

In petitioner's final challenge to the court's denial of his motion to dismiss the indictment, he maintains that the court erred by failing to recognize the law of the case[6] established during the 2002 case, arguing that the 2002 indictment was dismissed "based upon the fraudulently obtained and suppressed statement" and, therefore, the court should have extended the ruling to require dismissal of the 2017 indictment. Respondent counters that the law of the case has no application herein. We agree with respondent, as petitioner mischaracterized what transpired at the grand jury proceedings, and the suppressed statement was not used to obtain the indictment. Thus, this assignment of error fails.

Moving to his assignments of error concerning the court's trial rulings, petitioner maintains that the circuit court erred when it denied his motion for an in camera hearing on the morning of trial, which he sought for the purpose of questioning the alleged victims, their mother, and their aunt. Respondent counters that the circuit court's ruling was appropriate because petitioner was simply attempting to re-litigate the "possibility of false allegations" made by the victims of sexual misconduct against people other than petitioner.[7] Respondent notes that petitioner has not pointed to any legal authority that would require an in camera hearing, nor has he indicated how an in camera hearing would alter the circuit court's ruling on this issue. We agree with respondent.

---

[6] We have stated that

> The law of the case doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal." 5 Am.Jur.2d *Appellate Review* § 605 at 300 (1995) (footnotes omitted).

*State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003).

[7] The State moved in limine to preclude petitioner from presenting this evidence and cross-examining witnesses with it. The court granted the motion, relying primarily on Rule 404(b) of the West Virginia Rules of Evidence, which provides that, with a few enumerated exceptions, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

We have stated that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). As to this assignment of error, West Virginia's rape shield statute, West Virginia Code § 61-8B-11, was enacted to protect victims of sexual assault. This Court has specifically held that

> [e]vidence that the alleged victim of a sexual offense has made statements about being the victim of sexual misconduct, other than the statements that the alleged victim has made about the defendant and that are at issue in the state's case against the defendant, is evidence of the alleged victim's "sexual conduct" and is within the scope of West Virginia's rape shield law, *W.Va.Code*, 61–8B–11 [1986] and *West Virginia Rules of Evidence* 404(a)(3) [1994], unless the defendant establishes to the satisfaction of the trial judge outside of the presence of the jury that there is a strong probability that the alleged victim's other statements are false.

Syl. Pt. 1, *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997).

Here, the circuit court ruled that petitioner failed to offer strong and substantial proof of actual falsity and, even if he had, Rule 404(b) precluded the cross-examination of the victims.[8] Because petitioner does not mention or address the circuit court's findings and conclusions that the evidence would constitute inadmissible character evidence, he has failed to demonstrate that the court abused its discretion in deeming the evidence inadmissible.

Although the circuit court twice ruled on the admissibility of this evidence, petitioner sought an in camera hearing on the morning of trial to relitigate the "possibility of false allegations" made by F.B. and J.B. The circuit court refused this request, stating "[w]e already had a hearing on this. I've already entered an Order, and I made findings of fact and conclusions of law, and I held that evidence is not admissible under *Barbe*[9] and Rule 404(b)." Upon review of the record, the circuit court did not abuse its discretion with respect to this ruling. Accordingly, this assignment of error fails.

Petitioner next argues the court improperly limited the scope of petitioner's cross-examination of Sgt. Bennett, the victims' mother, the victims, and the victims' former babysitter. As to Sgt. Bennett, petitioner claims that he wanted to "ferret out whether the alleged victims. . .

---

[8] Petitioner also claims that the circuit court erroneously precluded his counsel from questioning the victims' babysitter, who babysat the victims around the time of the acts alleged in the indictment, with respect to the victims' reputation for truthfulness. Importantly, respondent notes that petitioner voiced no objection to this ruling below and therefore this issue is not properly before this Court. We agree with respondent. Inasmuch as this issue is not properly before this Court, we decline to address it. *See State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995) ("'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue.") (citation omitted).

[9] *Barbe v. McBride*, 521 F.3d 443 (4th Cir. 2008).

had falsely accused other adult male relatives or show the investigation was negligent and incomplete." Petitioner's briefing on this issue was inadequate and failed to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . The argument *must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Nowhere in petitioner's discussion does he point to how the issues were presented to the circuit court (therefore it is unclear if this was preserved for appellate review), if petitioner objected, or how the circuit court ruled on the objection. Even if petitioner preserved the issue for appellate review, he has failed to show that the circuit court abused its discretion in limiting the scope of petitioner's cross-examination. Therefore, we decline to address this assignment of error on appeal.

Next, petitioner maintains that the court erred in precluding petitioner from inquiring of the alleged victims' mother; the victims themselves; and the victims' aunt concerning prior false accusations of sexual misconduct against other male relatives. As to this assignment of error, petitioner's contention is skeletal, consisting of no citation to the record, no citation to when or how the issue was raised or ruled upon, no argument, and no legal analysis. Although petitioner makes the conclusory statement that "the door to inquiry was opened," he offers no factual support whatsoever from any part of the record. For the same reason that petitioner's previous assignment of error fails, this assignment of error fails.

Next, petitioner claims that the court erred in refusing to allow his counsel to cross-examine the victims, J.B. and F.B., with handwritten statements taken from them by the child protective services worker attendant to the 2002 indictment. Upon our review of the record, however, it appears that petitioner attempted to utilize a document that had not been authenticated regarding an interview of J.B. nineteen years earlier. Moreover, after the circuit court sustained the State's objection, petitioner did not raise an objection to the circuit court's ruling. Thus, petitioner waived his right to raise the issue on appeal. *See Miller*, 194 W. Va. at 18, 459 S.E.2d at 129.

Petitioner also claims that the circuit court abused its discretion by refusing to allow counsel to make an in camera inquiry about a disturbance that occurred outside the courtroom on the second day of trial when a witness was testifying. Petitioner claims that the disturbance was a

possible violation of the sequestration order and Rule 615 of the West Virginia Rules of Evidence, regarding sequestration of witnesses, and, accordingly, he sought to take testimony as to who said what to whom.[10] Despite petitioner's reliance on Rule 615, this argument is not properly before this Court because the record does not reflect that petitioner raised the Rule 615 argument below. *See State v. Shrewsbury*, 213 W. Va. 327, 334, 582 S.E.2d 774, 781 (2003) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.") (citation omitted).

Next, petitioner claims that the circuit court erred when it included the phrase the "truth of the matter" twelve different times in the jury charge, maintaining that the court placed improper and unconstitutional emphasis on the instruction. He suggests that the circuit court defined "beyond a reasonable doubt" to include an element of "truth." Respondent maintains this contention is conclusory and meritless. Petitioner's brief is deficient as to this assignment of error as he does not point to an objection (if one was raised), how the circuit court resolved the objection, why the circuit court's decision was erroneous, nor any relevant authority to support his argument. We have repeatedly noted that "[j]udges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Inasmuch as petitioner has failed to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, we decline to address this assignment of error on appeal.

Petitioner also argues that two of the jurors, Juror Harper and Juror Dillon, should have been removed from the jury panel for cause and that the circuit court's refusal to do so violated petitioner's due process right to an impartial jury. Respondent maintains that the circuit court did not err with respect to its decision not to strike these jurors and that petitioner's brief does not comport with the appellate rules governing petitioner's appeal. Upon a review of the record, we agree with respondent.

As to Juror Harper, petitioner's brief contains no citations to the record, cites no relevant authority, and makes no arguments applying this authority. Accordingly, we decline to consider the merits of petitioner's assignment of error as to Juror Harper due to his failure to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

As to Juror Dillon, petitioner maintains that she should have been struck for cause because the juror previously worked with a trial witness ("Witness Clutter") at a hospital as a medical record transcriptionist and could have transcribed notes from the emergency room examination of the victims. Notably, however, Juror Dillon stated under oath that she did not have access to patient files, rarely saw notes taken by Witness Clutter in the emergency room, and that her past employment with Witness Clutter would not affect her ability to be fair and impartial in the case.

---

[10] Petitioner relies on Syllabus Point 3 of *State v. Omechinski*, 196 W. Va. 41, 468 S.E.2d 173 (1996), where this Court held that "[a] circumvention of Rule 615 of the West Virginia Rules of Evidence occurs where witnesses indirectly defeat its purpose by discussing with other witnesses who are subject to recall testimony they have given and events occurring in the courtroom."

The circuit court denied petitioner's motion to strike for cause, finding that "[Juror Dillon] indicated that she can be fair and impartial and not biased towards any party, the State or the defendant." Petitioner ultimately removed Ms. Dillon with a peremptory strike. Although petitioner's brief does not comply with Rule 10 on this issue, he cannot prevail on the merits of this assignment of error because he removed the juror with a peremptory strike and did not show prejudice. Syl. Pt. 6, in part, *State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679 (2019) ( "A trial court's failure to remove a biased juror from a jury panel . . . does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice.") (Citation omitted.)

Next, petitioner argues that he should receive a new trial due to prejudice that resulted from the testimony of Trooper Daniel White regarding "other victims" and his "other investigations," even though these did not necessarily implicate petitioner. Respondent counters that this assignment of error is not only inadequately briefed, but it also ignores the corrective measures taken by the court such as the circuit court's unequivocal instruction to the jury "to disregard the testimony of Daniel White in its entirety. You are not to consider the testimony of Trp. White during the deliberations in any manner or for any purpose."[11] Given this corrective measure, the circuit court denied petitioner's post-trial motion for relief. Respondent maintains that petitioner has not only failed to acknowledge the rulings, but has also not demonstrated how the rulings were erroneous or insufficient. We agree, and, therefore, this assignment of error fails.

Petitioner's final three assignments of error assert that the circuit court improperly denied his motion for a directed verdict at the close of the State's evidence; improperly denied his post-verdict motion for judgment of acquittal; and cumulative error. As to these issues, petitioner's submissions fail to comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure. Each of these "assignments of error" is comprised of only a one-sentence assertion. Petitioner does not identify where and how these issues were dealt with by the circuit court. He does not cite any facts or legal authorities and fails to assert an argument. The final assignment of error is essentially the same. Just as we found with other of petitioner's inadequately briefed assignments of error, "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim....Judges are not like pigs, hunting for truffles buried in briefs." *Robert Morris N.*, 195 W. Va. at 765, 466 S.E.2d at 833 (citation omitted). Thus, we refuse to address these arguments on appeal.

## IV.    Conclusion

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 23, 2021

---

[11] Prior to this instruction, the circuit court granted petitioner's motion for a limiting instruction regarding Trooper White's testimony.

11

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton


Wooton, Justice, dissenting:

I respectfully dissent. I would have put this case on the Rule 20 docket in order to permit full briefing and oral argument on the substantial constitutional issue presented here: whether the fifteen-year pre-indictment delay denied petitioner his right to a speedy trial. In this regard, we have held that "[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the state and federal constitution. U.S. Const. Amend. VI; W.Va. Const., Art. 3, § 14." Syl. Pt. 1, *State v. Foddrell*, 171 W. Va. 54, 297 S.E.2d 829 (1982); *see also State v. Jessie*, 225 W. Va. 21, 28, 689 S.E.2d 21, 28 (2009) (clarifying that even where no Sixth Amendment violation is found, a substantial delay "causing prejudice to the defendant by way of loss of witnesses or other evidence" implicates Fifth Amendment due process concerns.

Petitioner alleges that in the fifteen years that elapsed between his first indictment, which was dismissed, and his second indictment, several key witnesses died or developed dementia. I believe that this Court needs to do a "deep dive" into the record to determine how critical those witnesses may have been to the petitioner's defense against the charges. Accordingly, I respectfully dissent.

12